Filed 7/2/26  Tafoya v. Booster Fuels CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| ANTHONY TAFOYA,<br>    Plaintiff and Respondent,<br><br>v.<br><br>BOOSTER FUELS, INC.,<br>    Defendant and Appellant. | C104234<br><br>(Super. Ct. No. 24CV014406) |

Anthony Tafoya filed a putative class action lawsuit against his former employer Booster Fuels, Inc. (Booster Fuels), alleging violations of the Labor Code and unfair business practices, and seeking civil penalties under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.) (PAGA).  Booster Fuels moved to compel arbitration of Tafoya's individual claims under the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (FAA).  Tafoya resisted arbitration, arguing that he belonged to a class of workers engaged in foreign or interstate commerce exempt from FAA coverage because his job involved refueling Amazon delivery trucks.  The trial court agreed with Tafoya and denied the motion to compel arbitration.  Because it concluded the FAA did not apply and Tafoya's claims were not arbitrable under Labor Code sections 229 and 432.6, the trial court did not consider the other claims raised in Booster Fuels' motion.

1

Booster Fuels now contends the FAA exemption does not apply in this case because (1) Tafoya did not establish that the class of workers to which he belonged typically fueled Amazon delivery trucks, and (2) in any event, a class of workers that typically fueled Amazon delivery trucks would not be engaged in foreign or interstate commerce.

We conclude Tafoya has not established that the FAA exemption applies in this case. Tafoya's FAA exemption claim is based on the fact that he typically fueled Amazon delivery trucks. But there is insufficient evidence to support an implied finding that the relevant class of workers consisted of Booster Fuels service professionals who typically fueled Amazon delivery trucks. In any event, the evidence indicates that the fuel Tafoya delivered was purchased and obtained in California, and there is insufficient evidence that Tafoya and other Booster Fuels service professionals typically drove outside California for their jobs, or typically handled or moved goods traveling to or from other states or countries. In other words, there is insufficient evidence that Tafoya, and the relevant class of workers, were transportation workers exempt from the FAA.

We will reverse the trial court's order and remand the matter so the trial court may consider the other claims raised in Booster Fuels' motion.

BACKGROUND

Tafoya was employed by Booster Fuels as a service professional. Although Booster Fuels did business in California, Oregon, and Washington, it maintained partnerships with local fuel providers in each of those states for the delivery of fuel to fleet, office, and commercial parking lots. Tafoya's primary job duty was to drive a fuel truck, deliver fuel to commercial fleet vehicles in the Sacramento region, and fill the fuel tanks of those vehicles. He drove from West Sacramento, California to client sites within California, regularly fueling more than 150 vehicles per shift. A significant number of the vehicles Tafoya fueled were Amazon delivery trucks. Tafoya fueled Amazon

2

delivery trucks at Amazon distribution centers in the greater Sacramento area. All of the fuel Tafoya delivered was purchased and obtained in California.

Tafoya filed a complaint against Booster Fuels on July 18, 2024. The operative pleading asserted causes of action for violations of the Labor Code, unfair business practices, and for civil penalties under PAGA.

Booster Fuels moved under the FAA to compel arbitration of Tafoya's individual claims. It also moved to strike the class allegations and stay the action pending completion of arbitration. Tafoya opposed the motion, arguing that he was a transportation employee exempt from the FAA, and that California Labor Code sections 229 and 432.6 barred arbitration of his claims.

The trial court denied Booster Fuels' motion to compel arbitration, concluding that Tafoya was a transportation worker engaged in interstate commerce and, therefore, exempt from the FAA. The trial court found that Tafoya delivered fuel to Amazon trucks, and that the goods arriving at Amazon distribution centers were part of interstate commerce. It ruled that fueling Amazon trucks was essential to the interstate and foreign transportation of goods by Amazon trucks. It further ruled that Tafoya could not be compelled to arbitrate his claims under Labor Code sections 229 and 432.6. Because it concluded the FAA did not apply and Tafoya's claims were not arbitrable under Labor Code sections 229 and 432.6, the trial court did not consider the other claims raised in Booster Fuels' motion.

DISCUSSION

I

Tafoya's FAA exemption claim is based on the fact that he typically fueled Amazon delivery trucks. Booster Fuels contends the FAA exemption does not apply in this case because Tafoya did not establish that the class of workers to which he belonged typically fueled Amazon delivery trucks.

3

The FAA governs arbitration agreements in contracts "evidencing a transaction involving commerce." (9 U.S.C. § 2; *New Prime Inc. v. Oliveira* (2019) 586 U.S. 105, 110 (*New Prime Inc.*).) However, it does not "apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." (9 U.S.C. § 1.) At issue here is whether Tafoya falls within a class of workers engaged in foreign or interstate commerce within the meaning of section 1 of the FAA.

The party opposing arbitration bears the burden of demonstrating that the FAA section 1 exemption applies. (*Betancourt v. Transportation Brokerage Specialists, Inc.* (2021) 62 Cal.App.5th 552, 559; see *Shearson/American Express v. McMahon* (1987) 482 U.S. 220, 227.) We review the trial court's factual findings for substantial evidence and its conclusions of law de novo. (*Nieto v. Fresno Beverage Co., Inc.* (2019) 33 Cal.App.5th 274, 279.) Substantial evidence is evidence that is " ' "of ponderable legal significance," ' " reasonable in nature, credible, and of solid value. (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1057.) Whether the FAA applies is a legal question we determine de novo. (*Betancourt*, at p. 559; *Nieto*, at p. 279.)

In *Southwest Airlines Co. v. Saxon* (2022) 596 U.S. 450 (*Saxon*), the United States Supreme Court instructed that courts must conduct a two-step analysis in deciding whether a worker falls within the FAA section 1 exemption. A court must first define the relevant class of workers to which the worker belongs, and then determine whether that class of workers engaged in foreign or interstate commerce. (*Saxon,* at p. 455.) In defining the relevant class of workers, a court must consider the actual work the class as a whole typically carried out, and not what the company, employer, or industry generally did. (*Id.* at p. 456; accord *Bissonnette v. LePage Bakeries Park St., LLC* (2024) 601 U.S. 246, 253-255 (*Bissonnette*).)

4

Tafoya worked for Booster Fuels as a service professional. The job description for that position stated that service professionals drove fuel trucks to deliver fuel to commercial and industrial fleet customers and pumped fuel into 80 to 150-plus customer vehicles per shift. Tafoya averred that his primary job duty at Booster Fuels was to drive a truck to deliver fuel to commercial fleet vehicles and fill the fuel tanks of those vehicles. He regularly fueled 150-plus vehicles per shift. The evidence showed that Tafoya belonged to a class of workers who typically delivered fuel to commercial and industrial fleet vehicles of Booster Fuels customers and filled those vehicles with fuel.

Tafoya averred that a significant number of the vehicles he fueled were Amazon delivery trucks. There was no evidence, however, that Booster Fuels service professionals, as a class, typically fueled Amazon delivery trucks, and thus there is insufficient evidence to support an implied finding that the relevant class of workers was Booster Fuels service professionals who typically fueled Amazon delivery trucks.

II

Booster Fuels further contends the FAA exemption does not apply in this case because a class of workers that typically fueled Amazon delivery trucks would not be engaged in foreign or interstate commerce.

The United States Supreme Court has explained that the FAA exemption applicable to workers engaged in foreign or interstate commerce pertains to transportation workers. (*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 109, 119 (*Circuit City Stores, Inc.*).) Although the exemption is not limited to workers in the transportation industry (*Bissonnette, supra*, 601 U.S. at pp. 249, 252,

5

256),[1] and the transportation workers need not physically move goods across foreign or interstate boundaries (*Saxon, supra*, 596 U.S. at p. 461), the exemption applies to workers who play a direct and necessary role in the free flow of goods across borders and are actively engaged in the transportation of goods across borders through channels of foreign or interstate commerce (*Saxon,* at p. 458; accord *Bissonnette,* at p. 256).

The issue in *Saxon* was whether a Southwest Airlines ramp supervisor was a transportation worker exempt under section 1 of the FAA. (*Saxon, supra*, 596 U.S. at p. 453.) Contrary to Tafoya's contention that the frequency with which other workers performed identical tasks is immaterial, the court in *Saxon* explained that the word "engaged" in section 1 of the FAA emphasized the actual work that class members (and not just the plaintiff) typically carried out. (*Saxon,* at pp. 450-451) The Supreme Court concluded that the ramp supervisor belonged to a class of workers who frequently loaded and unloaded cargo on and off airplanes bound for, and arriving from, other states or countries. (*Id.* at p. 456.) The court held that the class of workers to which the ramp supervisor belonged was part of the interstate transportation of goods because "one who loads cargo on a plane bound for interstate transit is intimately involved with the commerce (e.g., transportation) of that cargo. '[T]here could be no doubt that [interstate] transportation [is] still in progress,' and that a worker is engaged in that transportation, when she is 'doing the work of unloading' or loading cargo from a vehicle carrying goods in interstate transit." (*Id.* at pp. 458-459.) Consequently, the class of workers was engaged in foreign or interstate commerce and exempt from the FAA. (*Id.* at p. 457.)

---

[1] According to the Supreme Court, Congress excluded seamen, railroad employees, and "any other class of workers engaged in foreign or interstate commerce" from the FAA because it was concerned about the necessary role transportation workers played in the free flow of goods and it did not want to disturb established or developing statutory dispute resolution schemes covering seamen and railroad workers. (*Bissonnette, supra*, 601 U.S. at p. 253; *New Prime Inc., supra*, 586 U.S. at p. 110; *Circuit City Stores, Inc., supra*, 532 U.S. at p. 121.)

*Saxon* recognized that application of the exemption is less clear when the class of workers carries out duties further removed from the channels of interstate commerce or the actual crossing of borders.  (*Id.* at p. 457, fn. 2.)  Although those circumstances were not present in *Saxon*, the decisions in *United States v. American Bldg. Maintenance Industries* (1975) 422 U.S. 271 (*American Building Maintenance Industries*) and *Gulf Oil Corp. v. Copp Paving Co.* (1974) 419 U.S. 186 (*Gulf Oil Corp.*) are instructive.  (See *Saxon, supra*, 596 U.S. at p. 457, fn. 2; *Circuit City Stores, Inc., supra*, 532 U.S. at pp. 116-117.)

*American Building Maintenance Industries* and *Gulf Oil Corp.* construed the phrase "engaged in commerce" in the Clayton Act, which prohibits activities in restraint of foreign or interstate commerce.  (15 U.S.C. § 1 et seq.; *American Building Maintenance Industries, supra*, 422 U.S. at p. 283; *Gulf Oil Corp., supra*, 419 U.S. at p. 195.)  In *American Building Maintenance Industries*, the Supreme Court rejected the contention that janitorial services companies were engaged in interstate commerce merely because they performed services for enterprises that were engaged in interstate and foreign commerce.  (*American Building Maintenance Industries,* at pp. 283-284.)  The court held that simply supplying localized services to a corporation engaged in interstate commerce did not satisfy the " 'in commerce' " requirement of the Clayton Act.  (*Id.* at p. 283.)  Instead, to be "engaged 'in commerce,' " the janitorial services companies must themselves be directly engaged in the production, distribution or acquisition of goods or services in interstate commerce.  (*Ibid.*)  The Supreme Court noted that the janitorial services companies' activities were limited to providing services within California, and they purchased equipment and supplies in intrastate transactions from local distributors.  (*Id.* at pp. 284-285.)

In *Gulf Oil Corp.*, the Supreme Court rejected the argument that companies selling asphaltic concrete solely in California were engaged in interstate commerce because their product was used in the construction of interstate highways.  (*Gulf Oil Corp., supra*,

7

419 U.S. at pp. 189, 196-199.) The Supreme Court stated that expanding the meaning of "in commerce" to include activities "perceptibly connected to" instrumentalities of interstate commerce (i.e., interstate highways) would create a chain of connection with no logical endpoint and include a "universe of arguably included activities [that] would be broad and [have] limits nebulous in the extreme." (*Id.* at p. 198.)

Other courts have held that workers who maintained trucks or trains involved in the transportation of interstate goods, or who machined airplane parts, were not transportation workers for purposes of section 1 of the FAA. (*Coats v. TTX Company* (C.D. Cal., Feb. 27, 2024, No. EDCV232405MWFSPX) 2024 WL 1118997, at *3-4; *Holley-Gallegly v. TA Operating LLC* (C.D. Cal., Sept. 16, 2022, No. EDCV22593JGBSHKX) 2022 WL 9959778, at *2-3, vacated on another ground and remanded in *Holley-Gallegly v. TA Operating LLC* (9th Cir. 2023) 74 F.4th 997; *Stanley v. Wings Holdings, Inc.* (D. Minn., Sept. 23, 1997, No. 3-96-1141 (PAM)) 1997 WL 826175, at *6; but see *In re Western Dairy Transport, LLC* (Tex. App. 2014) 457 S.W.3d 467, 472-474.) The district court in *Stanley* noted that the airline mechanic in that case did not transport any goods in commerce. (*Stanley*, at *6.) The district courts in *Coats* and *Holley-Gallegly* concluded that the train and truck mechanics in those cases were too removed, and only " 'perceptively' " connected, to instrumentalities of interstate commerce. (*Coats*, at *4; *Holley-Gallegly,* at *3.)

The Supreme Court in *Saxon* distinguished the facts before it from those in *American Building Maintenance Industries* and *Gulf Oil Corp.* (*Saxon, supra*, 596 U.S. at pp. 462-463.) It stated that unlike those who sell asphalt for highway construction, or those who perform janitorial services for corporations involved in interstate commerce, Southwest Airlines cargo loaders performed " 'activities within the flow of interstate commerce' " by handling the goods traveling in interstate and foreign commerce. (*Ibid.*)

Because caselaw focuses on whether individuals are actively engaged in the transportation of interstate goods, and seeks to avoid a chain of connection with no

logical endpoint or an overly broad universe of arguably included activities, we focus on the product Tafoya delivered:  the fuel.  The evidence indicates Tafoya hauled fuel locally obtained and delivered.  (*American Building Maintenance Industries, supra*, 422 U.S. at pp. 283-284; *Gulf Oil Corp., supra*, 419 U.S. at pp. 189, 196-199.)  There was no evidence that the fuel previously or subsequently crossed California's borders; that Tafoya or other Booster Fuels service professionals drove to locations outside California for their jobs; or that Tafoya or other Booster Fuels service professionals transported goods traveling to or from other states or countries.  Even if Amazon drivers were engaged in interstate commerce – facts not established by substantial evidence in this case (see Evid. Code, §§ 702, 800; see generally *Newton v. Los Angeles Transit Lines* (1951) 107 Cal.App.2d 624, 626 (*Newton*)) – and even if the Amazon trucks needed fuel from Booster Fuels to deliver the packages, Tafoya was not directly involved in the transportation of Amazon packages.  There is insufficient evidence that Tafoya or other Booster Fuels service professionals played a direct role in the transportation of goods across borders and that they were transportation workers within the meaning of section 1 of the FAA.

In its appellate reply brief, Booster Fuels asked us to stay this matter pending the decision in *Flower Foods, Inc. v. Brock* (2025) 146 S.Ct. 327 [United States Supreme Court case No. 24-935].  The request is moot because the United States Supreme Court has since issued its decision.  (*Flowers Foods, Inc. v. Brock* (2026) 608 U.S. __ [146 S.Ct. 1358] (*Flower Foods*).)  The Supreme Court held that "a worker who transports goods on an intrastate leg of an interstate journey" can qualify for the FAA exemption.  (*Id.* at p. 1363.)  *Flower Foods* does not alter our conclusion in this case because Tafoya has not established that, unlike the baked goods in *Flower Foods*, the fuel delivered by Tafoya and other Booster Fuels service professionals was on an intrastate leg of an interstate journey.  (*Id.* at pp. 1362-1363.)

9

Other federal decisions are also distinguishable. In *Rittman v. Amazon.com, Inc.* (9th Cir. 2020) 971 F.3d 904, packages that had crossed state lines were picked up by workers at Amazon warehouses and delivered to Amazon customers. (*Id.* at pp. 907, 915, 917.) But as we have explained, here, unlike in *Rittman*, there is no evidence Tafoya or other Booster Fuels service professionals transported goods that had crossed state lines.

In *Lopez v. Aircraft Service Internat.* (9th Cir. 2024) 107 F.4th 1096, the court held that an airline fuel technician was a transportation worker under section 1 of the FAA because he fueled airplanes that were in interstate and foreign travel. (*Lopez,* at pp. 1097-1098, 1101-1103.) And in *Wirtz v. B. B. Saxon Co.* (5th Cir. 1966) 365 F.2d 457, the appellate court construed the Fair Labor Standards Act (29 U.S.C. § 201 et seq.), finding that the military bases at which workers hauled airplane fuel were instrumentalities of interstate commerce to the extent interstate flights flew into and out of the bases. (*Wirtz,* at p. 461) The court in *Wirtz* also found that the vehicles performing functions essential to moving and servicing the airplanes were instrumentalities of commerce. (*Id.* at p. 461.)

Unlike in *Lopez* and *Wirtz*, there is insufficient evidence Tafoya and other Booster Fuels service professionals fueled vehicles involved in interstate travel. Tafoya did not establish that the vehicles he fueled had come from, or would travel to, other states. His understanding that Amazon packages had come from other states, without a statement of supporting facts, was not substantial evidence that the Amazon trucks he or other Booster Fuels service professionals fueled were involved in interstate travel. (See Evid. Code, §§ 702, 800; see generally *Newton, supra*, 107 Cal.App.2d at p. 626.)

Tafoya did not establish that he fell within the transportation worker exemption of the FAA. On remand, the trial court must consider the other claims made in Booster Fuels' motion to compel arbitration.

DISPOSITION

The order of the trial court denying Booster Fuels' motion to compel arbitration is reversed. The matter is remanded so the trial court may consider the other claims raised in Booster Fuels' motion.

/S/
MAURO, J.

We concur:

/S/
EARL, P. J.

/S/
ROBIE, J.

11